1

2                                                    **E-Filed 9/25/08**

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10

11

12   CHARLOTTE ANNE STINSON,              Case Number 07-2773 JF

13                 Plaintiff,             ORDER[2] DENYING PLAINTIFF'S
                                          MOTION FOR SUMMARY JUDGMENT;
14        v.                              GRANTING  PLAINTIFF'S
                                          ALTERNATIVE MOTION FOR REMAND;
15   MICHAEL J. ASTRUE,[1]                AND DENYING DEFENDANT'S MOTION
     Commissioner of Social Security,     FOR SUMMARY JUDGMENT
16
17                 Defendant.

18

19                          **I.  BACKGROUND**

20        Plaintiff Charlotte Ann Stinson ("Stinson") filed this action *pro se* on May 25, 2007,

21   appealing a decision by Defendant Commissioner of Social Security (the "Commissioner") that

22   denied her disability insurance benefits and supplemental security income.[3]  On June 8, 2007, the

23   _____

24        [1]Michael J. Astrue became Commissioner of the Social Security Administration on
     February 1, 2007.
25
         [2] This disposition is not designated for publication in the official reports.
26
27        [3]The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen
     ("the ALJ") on April 28, 2006.  The ALJ's decision became final on March 21, 2007, when the
28   Appeals Council of the Social Security Administration denied Plaintiff's request for

1  Court granted Stinson's application to proceed *in forma pauperis* against the Commissioner.

2  Since filing her complaint, Stinson has obtained counsel, and the parties have filed cross-motions

3  for summary judgment. For the reasons set forth below, the Court will deny both motions and

4  will remand the case to the ALJ for further proceedings consistent with this Order.

5        The following facts are taken from the ALJ's decision on April 28, 2008 and the

6  accompanying Administrative Record ("AR").  At the time of the  hearing before the ALJ,

7  Stinson was fifty-one years old.  AR at 22, 238. After graduating from high school, Stinson

8  attended Andrew Hill Adult School for a short period but did not complete a course of study.  *Id.*

9  at 168.  Her past work experience included employment as a stock clerk and as a housekeeper.

10  *Id.* at 25.  Stinson alleges that she became disabled in December 2003 as a result of persistent leg

11  and back problems, dyslexia, other learning disabilities, and the inability to read and write.  *Id*. at

12  21–22.  On December 28, 2004, Stinson filed concurrent applications for disability insurance

13  benefits and supplemental security income.  *Id.* at 19.  Her application was denied initially and

14  upon her motion for reconsideration.  *Id.*  Stinson, testified at the hearing.  *Id.*  Vocational expert

15  Scott Simon also testified.  *Id.*

16        The ALJ found that Stinson "[had] not been under a disability within the meaning of the

17  Social Security Act at any time through the date of [the] decision."  *Id.* at 20.  The ALJ explained

18  that the Social Security Administration has established a five-step sequential evaluation process

19  for determining whether an individual is disabled under 20 CFR §§ 404.1520(a) and 416.920(a).

20  AR at 20. At step one, the ALJ concluded that Stinson had "not engaged in substantial gainful

21  activity from 2005 through the present."  *Id.* at 20–21.  The ALJ noted that Stinson did engage in

22  substantial gainful activity in 2004, even though she claims onset of disability in December 2003.

23  At step two, the ALJ found that Stinson's degenerative disc disease of the lumbar spine, mixed

24  receptive-expressive language disorder, and  history of learning disorder constituted severe

25  impairments under 20 CFR §§ 404.1520(c) and 416.920(c).  *Id.*  At step three, however, the ALJ

26  concluded that Stinson did  not have an impairment or combination of impairments that met or

27

28  administrative review of the decision.

1  medically equaled one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at
2  20, 22.

3       In determining Stinson's residual functional capacity, the ALJ found that Stinson was
4  "able to lift and carry twenty-five pounds frequently and fifty pounds occasionally; and . . . [was]
5  able to sit, stand and/or walk for about six hours of an eight hour workday." *Id.* at 24.
6  Additionally, the ALJ determined that Stinson could "perform simple, repetitive tasks." *Id.* The
7  ALJ found that Stinson's residual functional capacity enabled her to "work as a housekeeper and
8  as a stocker." *Id.* at 25. Based on these determinations, the ALJ concluded that Stinson was not
9  disabled as defined by the Social Security Act at any time through the date of his decision. *Id.*

10                              **II. LEGAL STANDARD**

11  **A. Standard for Reviewing the Commissioner's Decision**

12       Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's
13  decision denying Stinson benefits. The Court must affirm the ALJ's decision if it determines that
14  substantial evidence supports the ALJ's findings and that the ALJ applied the correct legal
15  standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d
16  1255, 1257 (9th Cir. 1992). In this context, the term "substantial evidence" means "more than a
17  mere scintilla but less than a preponderance—[it] is such reasonable evidence that a reasonable
18  mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also*
19  *Drouin*, 966 F.2d at 1257. When determining whether substantial evidence exists to support the
20  ALJ's decision, the Court examines the administrative record as a whole, considering adverse as
21  well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501
22  (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the
23  Court must defer to the ALJ's decision. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

24  **B. Standard for Determining Disability**

25       A person is "disabled" for purposes of receiving social security benefits if he or she is
26  unable to engage in any substantial gainful activity caused by a physical or mental impairment
27  that is expected to result in death or that  has lasted or is expected to last for a continuous period
28  of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452

                                         3

1   (9th Cir. 1984).

2           Social security disability cases are evaluated using a five-step, sequential evaluation

3   process.  AR at 20.  In the first step, the Commissioner must determine whether the claimant

4   currently  is engaged in substantial gainful activity ("SGA")[4]; if so, the claimant is not disabled,

5   and the claim is denied.  *Id.*  If the claimant  is not engaged in SGA, the second step requires the

6   Commissioner to determine whether the claimant has a "severe" impairment or combination of

7   impairments that significantly limit the claimant's ability to perform basic work activities; if not,

8   the claimant is not disabled, and the claim is denied.  *Id.*  If the claimant has a "severe"

9   impairment or combination of impairments, the third step requires the Commissioner to

10  determine whether the "impairment or combination of impairments meets or medically equals the

11  criteria of an impairment listed in 20 CFR Part 404, subpart P, Appendix 1."  *Id.*  In the fourth

12  step, the Commissioner must determine whether the claimant has sufficient "residual functional

13  capacity"[5] to perform his or her past work; if so, the claimant is not disabled and the claim is

14  denied.  *Id.* at 21.  The claimant has the burden of proving that he or she is unable to perform past

15  relevant work.  *Drouin*, 966 F.2d at 1257.  If the claimant meets this burden, she has established

16  a *prima facie* case of disability.  Finally, in the fifth step of the sequential analysis, the burden

17  shifts to the Commissioner to establish that the claimant can perform other substantial gainful

18  work.[6] *Id.*; 20 CFR §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir.

19  1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

20

21

22          [4]SGA is work that involves significant physical or mental activities performed for pay or
23  profit. *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

24          [5]A claimant's residual functional capacity ("RFC") is what he or she can still do despite
25  existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5
    (9th Cir. 1989).

26          [6] There are two ways in which the Commissioner may meet the burden of showing that
27  there is other work in significant numbers in the national economy that the claimant can perform:
    (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational
28  Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

### III.  DISCUSSION

Stinson asks that the Court reverse the Commissioner's final decision and remand this case to the Social Security Administration for immediate payment of benefits.  Alternatively, Stinson asks that her case be remanded to the ALJ for further additional administrative proceedings to determine whether she is disabled.  The specific issues raised in this case are whether the ALJ properly:  (1) assessed Stinson's credibility; (2) assessed Stinson's exertional and mental RFC;  and (3) developed the administrative record.

**A. Whether the ALJ Properly Assessed Plaintiff's Credibility**

Stinson argues that the ALJ improperly discounted her credibility without articulating clear and convincing reasons for doing so.  She asserts that the ALJ failed to determine "whether [her] symptoms were reasonably related to the medical impairments shown by the evidence."  Pl.'s Mot. for Summ. J. at 4–5.  Stinson further claims that the ALJ's finding of discrepancies was not sufficiently specific.

The ALJ's assessment of a claimant's credibility must be "properly supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1995) (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1213–14 (11th Cir. 1991)(quotations omitted)).  This Court must give deference to the ALJ's assessment of Stinson's credibility if it is properly supported by the record and applicable legal standards.  *Rollins v. Massanaril*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)).

Here, the ALJ assessed Stinson's claims pursuant to Social Security Ruling 96-7p and Regulations 20 CFR §§ 404.1529 and 416.929.  AR at 24.  Specifically, the ALJ found:

> discrepancies between [Stinson's] assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining physicians, the level of restrictions on the claimant in the physician opinions of record, and the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians.

*Id.*  The ALJ additionally found that the degree to which Stinson sought medical care was minimal

5

1  as compared to "the levels of pain and disability alleged by claimant." *Id.* Finally, the ALJ noted

2  that Stinson had engaged in "substantial gainful activity from 1997 through 2004, despite an

3  alleged onset date of 2003." *Id.*

4        The record as a whole demonstrates that the ALJ did not dismiss Stinson's testimony

5  arbitrarily but rather rejected the testimony on permissible grounds.  In *Johnson v. Shalala*, the

6  Ninth Circuit held that discrepancies between medical evidence and a plaintiff's testimony may be

7  considered in a credibility assessment.  60 F.3d 1428, 1434 (9th Cir. 1995).  In the instant case,

8  for example, multiple physicians opined that Stinson did not have severe physical impairments

9  and that she could perform her past work.  AR at 22–23.  An ALJ may reject a plaintiff's claims

10  "based on clear and convincing reasons supported by specific facts in the record that demonstrate

11  an objective basis for his finding."  *Connett v. Barnhart*, 340 F.3d 871, 873–74 (9th Cir. 2003).  In

12  this case, the ALJidentified the testimony and evidence that suggested the testimony was not

13  credible by comparing Stinson's reported degree of pain with the amount of care sought.  AR at

14  24; *see Connett*, 340 F.3d at 873–74.  Affording the ALJ's credibility determination the deference

15  to which it is entitled, the Court finds no error.

16  **B. Whether the ALJ properly assessed Plaintiff's exertional and mental RFC**

17        Stinson contends that the ALJ improperly assessed her RFC and therefore incorrectly

18  found that she was not disabled.  The claimant bears the initial burden of establishing disability by

19  showing that a physical or mental impairment prevents her from engaging in any of her previous

20  occupations.  *Sanchez v. Sec'y of HHS*, 812 F.2d 509, 511 (9th Cir. 1989); *Allen v. Sec'y of HHS*,

21  726 F.2d 1470, 1472 (9th Cir. 1984).  In assessing a claimant's medical reports, the ALJ must

22  assess all evidence, including the claimant's medical reports, to determine what capacity the

23  claimant has for work despite her impairments.  20 CFR 404.1545(a).  The ALJ may resolve

24  disputes in contradicted medical evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

25  1989); *Vincent ex rel. Vincent v. Keckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

26        Here, the ALJ considered all of the medical evidence in the record before determining that

27  Stinson had the exertional and mental RFC to do medium, unskilled work.  AR at 24–25.  Stinson

28  argues that the ALJ's determination of her exertional RFC was not supported by substantial

6

1  evidence. Pl.'s Mot. for Summ. J. at 6. Dr. Lara Salamancha examined Stinson and opined that

2  Stinson could perform light work. However, Stinson asserts that reliance on this opinion was

3  improper because Dr. Salamancha conducted her exam and wrote her opinion without seeing the

4  results of x-rays that were available four days later. Pl.'s Mot. for Summ. J. at 6. ; AR at 172–75.

5  Even discounting Dr. Salamancha's opinion, substantial evidence supports the ALJ's assessment

6  of Stinson's exertional RFC. The findings of multiple doctors indicate that Stinson does not have

7  a severe physical impairment preventing her from performing her past work.

8      Stinson also contends that the ALJ's assessment of her mental RFC was not supported by

9  substantial evidence. Specifically, Stinson asserts that the ALJ "did not account for limits

10 assessed by several doctors in being able to deal with the general public" in finding that Stinson

11 could perform her past work. Pl.'s Mot. for Summ. J. at 7. However, Stinson bears the burden of

12 establishing that she can no longer perform her past work at step four of the five-step analysis.

13 *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2003); *Matthews v. Shalala*, 10 F.3d 678, 681

14 (9th Cir. 1993). Although multiple doctors noted that Stinson had difficulty interacting with the

15 public, none stated that this precluded her from performing her past work. AR at 22–23. A

16 vocational expert, Dr. Joan Yoos, opined that despite Stinson's disabilities, "she has adapted to

17 her challenges, working for many years as a stock person." *Id.* at 22.

18 **C. Whether the ALJ properly developed the record**

19     Finally, Stinson argues that the ALJ did not properly develop the record to the degree

20 required for a claimant without representation. Stinson contends that important medical evidence

21 and records were not available to physicians, which resulted in a less than fully developed record.

22 She also claims that the ALJ improperly proceeded to step two of the analysis without resolving a

23 conflict at step one as to whether Stinson performed work after the alleged onset of disability.

24 Stinson asserts that medical evidence submitted after the hearing could have affected the outcome

25 of the ALJ's decision regarding Plaintiff's mental RFC.

26     In a social security case, the ALJ has a "'duty to fully and fairly develop the record and to

27 assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th

28 Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). In cases "where the

Case No. 07-2773 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1  claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously

2  probe into, inquire of, and explore for all the relevant facts." *Cox v. Califano*, 587 F.2d 988, 991

3  (9th Cir. 1978) (quotation marks and citations omitted).  The ALJ may discharge this duty in

4  several ways, including: subpoenaing the claimant's physicians, submitting questions to the

5  claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

6  allow supplementation of the record.  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

7         Stinson's waiver of her right to representation did not discharge the ALJ from his

8  heightened duty to develop the record of a claimant proceeding without representation.  When

9  explaining to Stinson what would occur throughout the course of the hearing, the ALJ stated:

10           First I'm going to swear you in.  Then I'm going to explain what the issue is.
             Then I'm going to ask you some questions, and then after that you're going to tell
11           me whatever you want, and keep in mind that if I don't ask you questions about a
             subject or some facts that you think is important – are important, it doesn't mean
12           that I don't think they're important; it's just I've never met you before.  I've
             looked at this file once on March 12th, haven't seen it since.  Well, March 12th
13           wasn't that long ago, but I've only seen the file once.  I may not realize everything
             that's in – I'm sure I don't realize everything that's important to you; you just
14           have to tell me.

15  AR 235–36.  Throughout the remainder of the hearing, the ALJ did inquire into Stinson's work

16  history and physical and mental impairments.  However, the ALJ began inquiry into Stinson's

17  impairments not by asking specific questions, but by directing Stinson to "tell [him] about" her

18  leg problems, back problems, and dyslexia.  *See AR* at 244, 246.

19         The ALJ's failure to ask specific questions impermissibly shifted the burden of developing

20  the record to Stinson.  Stinson has a high school education and claims mental disabilities.  The

21  ALJ admittedly was almost completely unfamiliar with her file.  It is unreasonable to expect a

22  claimant to be able to present all relevant facts in narrative form under these circumstances.  This

23  is particularly true given the fact that it appears that at least some of the medical records were

24  incomplete.  For example, the ALJ relied upon the report of Dr. Salamancha, an orthopedist who

25  examined Stinson and provided a written report four days prior to the date on which x-rays that

26  revealed abnormalities in Stinson's lumbar spine became available.  Knowledge of these

27  abnormalities may have affected Dr. Salamancha's opinion.  Consequently, the ALJ relied on an

28  incomplete record in making his determination.

8

1      In light of the ALJ's failure to develop the record and reliance on an incomplete

2 physician's report, the Court will grant Stinson's alternative request to remand the case for further

3 administrative proceedings to determine whether additional facts may be discovered that might

4 materially affect the ALJ's decision.

5 **IV.  ORDER**

6      Good cause therefor appearing, IT IS HEREBY ORDERED that Stinson's motion for

7 summary judgment is DENIED; the Commissioner's motion for summary judgment is DENIED;

8 and the matter is REMANDED to the ALJ for future proceedings consistent with this opinion.

9

10 DATED: September 24, 2008

11

12

13

14

15           JEREMY FOGEL
          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. 07-2773 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1    This Order has been served upon the following persons:

2

3    James Hunt Miller      jim_miller0@yahoo.com

4

5    Donna Mae Montano      donna.m.montano@ssa.gov

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07-2773 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX2)